IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PEGGY ANN BROCK HARTZOG,         )
                                 )
          Plaintiff,             )
                                 )
     v.                          )   Civil Action No. 15-178
                                 )
COMMISSIONER OF SOCIAL SECURITY, )
                                 )
          Defendant.             )

O R D E R

AND NOW, this 31st day of March, 2016, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 15) filed in the above-captioned matter on July 24, 2015,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 13) filed in the above-captioned matter on June 24, 2015,

IT IS HEREBY ORDERED that said Motion is GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's Motion is granted to the extent that it seeks a remand to the Commissioner of Social Security ("Commissioner") for further evaluation as set forth below, and denied in all other respects. Accordingly, this matter is hereby remanded to the Commissioner for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

1

## I. Background

Plaintiff Peggy Ann Brock Hartzog filed a claim for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434, proactively effective to August 28, 2008, claiming that she became disabled on January 31, 2006,[1] due to fibromyalgia, arthritis, constant hip, leg, and foot pain, migraines, irritable bowel syndrome, ankle instability, depression, lower back pain, right wrist and elbow pain, and chronic fatigue . (R. 9, 26, 100-06, 141, 147). On May 27, 2009, she also filed a claim for Supplemental Security Income under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f. (R. 9, 107-113).

After being denied initially on January 6, 2009, Plaintiff sought, and obtained, a hearing before an Administrative Law Judge ("ALJ") on June 15, 2010. (R. 24-55, 68-78, 79-80). In a decision dated October 18, 2010, ALJ Guy Koster denied Plaintiff's request for benefits. (R. 9-22). The Appeals Council declined to review the ALJ's decision on August 22, 2011. (R. 1-5). Plaintiff filed a timely appeal with the United States District Court for the Western District of Pennsylvania, and, by order dated July 27, 2012, the Honorable

---

[1] Plaintiff's onset date was later amended to December 8, 2007 to correspond to the day after an unfavorable decision on Plaintiff's prior claim for benefits. (R. 9, 26). However, on remand, the ALJ used the original January 31, 2006 onset date. The issue of the onset date should be clarified on remand.

2

Cathy Bissoon remanded the case for further administrative proceedings. Specifically, Judge Bissoon found that she could not determine whether the ALJ had properly factored the effects of Plaintiff's migraine headaches into the residual functional capacity analysis and that the ALJ had failed to describe the work-related limitations from those headaches. Accordingly, she remanded for further consideration of this issue, and also indicated that the ALJ should also consider the weight to be given to the opinion of Plaintiff's treating physician Dr. Christopher Rhody, D.O. (R. 678-87).

Upon remand, a supplemental hearing was held before a new ALJ on September 19, 2014. (R. 632-76).[2] In a decision dated December 23, 2014, the ALJ denied Plaintiff's request for benefits. (R. 603-19). Having exhausted her administrative remedies, Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

## II.  **Standard of Review**

Judicial review of a social security case is based upon the pleadings and the transcript of the record. See 42 U.S.C. § 405(g). The scope of review is limited to determining whether

---

[2]  An earlier hearing scheduled for June 26, 2014 was cancelled because the ALJ to whom the case had previously been reassigned on remand, Joanna Papazekos, discovered that she had a conflict of interest in that she had previously represented Plaintiff. (R. 627-31). The case was then reassigned to the current ALJ, Michael Kaczmarek.

the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. See Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive" (quoting 42 U.S.C. § 405(g))); Schaudeck v. Commissioner of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (noting that the court has plenary review of all legal issues, and reviews the administrative law judge's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). However, a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion." Id.

4

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period. See Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ....'" Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration ("SSA") has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability as defined by the Act. See 20 C.F.R. §§ 404.1520, 416.920. In Step One, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the disability claim will be denied. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. See 20 C.F.R. §§ 404.1520(c), 416.920(c). "An impairment or combination of impairments is not severe if it does not

significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a). If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the Commissioner must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. See 20 C.F.R. §§ 404.1520(d), 416.920(d). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

Step Four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work. See 20 C.F.R. §§ 404.1520(e), 416.920(e). The claimant bears the burden of demonstrating an inability to return to his or her past relevant work. See Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his or her former occupation, the evaluation moves to the fifth and final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. See 20 C.F.R. §§ 404.1520(g), 416.920(g). In making this determination, the ALJ

should consider the claimant's RFC, age, education, and past work experience. See id. The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. See 20 C.F.R. §§ 404.1523, 416.923.

## III. **The ALJ's Decision**

In the present case, the ALJ found that Plaintiff met the insured requirements of the Social Security Act through March 31, 2009. (R. 605). Accordingly, to be eligible for DIB benefits, Plaintiff had to establish that she was disabled on or before that date. See 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101, .110, .131.

The ALJ then proceeded to apply the sequential evaluation process when reviewing Plaintiff's claims for benefits. In particular, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since January 31, 2006, on or before the properly alleged onset date. (R. 605). The ALJ also found that Plaintiff met the second requirement of the process insofar as she had several severe impairments, specifically: fibromyalgia, degenerative disc disease of the cervical spine, sciatica, status post arthroscopic surgery of the left knee, carpal tunnel syndrome of the right hand, right hip bursitis, mild degenerative disc disease of the lumbar spine, osteoarthritis, irritable bowel syndrome, anal fissure, status

7

post abdominal surgery, migraines, somatoform disorder, and major depressive disorder. (R. 605-06). The ALJ concluded that Plaintiff's impairments did not meet any of the listings that would satisfy Step Three. In so finding he did not consider whether Plaintiff's migraines met Listing 11.03. (R. 606-07).

The ALJ found that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that she can only occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; that she can only occasionally balance, stoop, kneel, crouch, and crawl; that she requires a sit/stand option, wherein she would be afforded the option to sit and stand at will, so long as she is not off task greater than 10 percent of the time; that she must avoid even moderate exposure to extremes in heat and cold; that she can perform frequent hand movements, such as assembly work or typing; that she is limited to performing routine, repetitive tasks at an SVP level of 1-2 and must work in a static, low stress environment with infrequent changes, and that those changes that did occur must be explained and/or demonstrated and must be capable of being learned in 30 days or less; that the work must not be fast-paced or have strict production or time quotas; that she can have only occasional interaction with others; and, finally, that she must be afforded the opportunity to wear a TENS unit at will throughout the day.

(R. 607-17). Based on this RFC, Plaintiff established that she is incapable of returning to her past employment; therefore, the ALJ moved on to Step Five. (R. 617-18).

At Step Five, the ALJ used a vocational expert ("VE") to determine whether or not there were a significant number of jobs in the national economy that Plaintiff could perform. The VE testified that, based on Plaintiff's age, education, past relevant work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy, including addresser, document preparer, and sorter. (R. 618-19, 667-68). Accordingly, the ALJ found that Plaintiff was not disabled. (R. 619).

IV. **Legal Analysis**

As noted above, this case has already been remanded for reconsideration once. As Judge Bissoon explained in her 2012 opinion, the first ALJ decision in this matter failed to discuss adequately the effect of Plaintiff's migraines on her RFC.[3]

---

[3] RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001). See also 20 C.F.R. §§ 404.1545(a), 416.945(a). Not only must an ALJ consider all relevant evidence in determining an individual's RFC, the RFC finding "must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" Fargnoli, 247 F.3d at 41 (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)). "'[A]n examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so

Unfortunately, remand is again required on the basis of Plaintiff's migraines, as the ALJ to whom the case was reassigned also failed to properly support his findings regarding Plaintiff's headaches. Accordingly, the Court will remand for further consideration and discussion of Plaintiff's migraine headaches and their impact on Plaintiff's RFC.

Although the ALJ here did discuss Plaintiff's migraine headaches at some length, his ultimate findings on the issue are not supported by substantial evidence. The first issue is that the ALJ found Plaintiff's migraines to constitute a severe impairment at Step Two of the sequential analysis (R. 605), but went on, in determining Plaintiff's RFC, to find that the record did not establish "debilitating" headaches lasting for at least 12 consecutive months at any time during the relevant time frame. (R. 611). In finding that Plaintiff's headaches constituted severe impairments at Step Two, he necessarily found that they had lasted or were expected to last for a continuous period of at least 12 months. See 20 C.F.R. §§ 404.1509, 416.909. It is not clear whether the use of the term

---

that a reviewing court may know the basis for the decision.'" Id. (quoting Cotter, 642 F.2d at 705). See also S.S.R. 96-8p, 1996 WL 374184 (S.S.A.), at *7 ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).").

10

"debilitating" was supposed to explain this apparent inconsistency between the ALJ's analysis at Step Two and at Steps Four and Five, but the Court is unable to discern any basis for such a finding.

Moreover, the ALJ's finding that Plaintiff's migraine headaches did not last for any continuous 12-month period is based on several grounds that are either incorrect or immaterial, rendering his finding lacking in adequate support. For instance, the ALJ relies on the alleged fact that Dr. Rhody's notes contain no mention of headaches after July of 2009 until June of 2010. (R. 610). As Plaintiff points out, this is incorrect. The records demonstrate that Plaintiff complained of a "horrible headache" to Dr. Rhody on September 8, 2009, and that she again reported having a headache on November 17, 2009. (R. 551, 557). Further, the records indicate that Plaintiff continued to take Inderal for her migraines during this period and that Dr. Rhody had at least some concern that the Inderal might fail at controlling the headaches. (R. 544). Accordingly, the alleged gap in Plaintiff's treatment for headaches with Dr. Rhody is much smaller than the ALJ believed, if such a gap existed at all. Moreover, it is unclear how Dr. Rhody's records, when accurately considered, demonstrate that Plaintiff did not suffer from migraine headaches for any continuous 12-month period.

The ALJ also relies on the fact that Plaintiff did not report any problems with headaches to her neurologist, Pushpa Kamari, M.D. (R. 610). However, as Plaintiff points out, she saw Dr. Kamari only a handful of times over a fairly small time frame, and she did not see him for headaches. Moreover, Dr. Kamari identified migraines as part of Plaintiff's medical history, and his review of Plaintiff's symptoms on September 10, 2008 does arguably include findings of migraine-related symptoms such as ringing in the ears and blurred vision that comes and goes. (R. 457-58). Accordingly, it is not apparent how these records support a finding that Plaintiff's migraine headaches at no point lasted as long as 12 continuous months. Likewise, it is unclear how a single reported incident where Plaintiff mowed her lawn supports such a finding.

An ALJ "'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). Here, the ALJ's finding about the duration of Plaintiff's migraine headaches is premised on several mistakes and several facts whose relevance is not evident. As such, the Court cannot find that the ALJ's finding in this regard is supported by substantial evidence.

Further, even the "significant improvement" in Plaintiff's migraine headaches once she again began taking Topamax

prescribed by Tatyana Barsouk, M.D., in July of 2014 resulted in Plaintiff continuing to have migraines once or twice a week. (R. 1928). It seems difficult to imagine that one or two migraines per week, which, again, represents Plaintiff's improved state while her migraines are under control on Topamax, would result in no functional limitations whatsoever. Accordingly, even if the ALJ's finding that Plaintiff's migraines were not "debilitating" for longer than a 12-month period was adequately supported, it is not clear that he has even accounted for her improved condition in formulating her RFC.

The Court is very cognizant of the age of this case, and it is reluctant to remand it again for further consideration. However, the record simply does not permit the Court simply to reverse and remand the case for an award of benefits. While the Court believes that the ALJ's finding that Plaintiff's migraine headaches cause no functional limitations is not supported by substantial evidence, it cannot and is not holding that the ALJ must therefore simply adopt all of Plaintiff's self-reported limitations. Frankly, more review and consideration of the evidence is needed to determine precisely what additional functional limitations should be included, and what impact those limitations would have on Plaintiff's ability to engage in substantial gainful activity. Accordingly, the Court cannot

find that substantial evidence in the record as a whole indicates that Plaintiff is disabled and entitled to benefits. See Podedworny v. Harris, 745 F.2d 210, 221-22 (3d Cir. 1984). The Court does urge the Commissioner to adjudicate this matter as quickly as possible on remand.[4]

## V. Conclusion

In short, the record does not permit the Court to determine whether the ALJ's formulation of Plaintiff's RFC and his finding that Plaintiff is not disabled are supported by substantial evidence, and, accordingly, the Court finds that substantial evidence does not support the ALJ's decision in this case. The Court hereby remands this case to the Commissioner for reconsideration consistent with this Order.

s/Alan N. Bloch<br>
United States District Judge

ecf: Counsel of record

---

[4] On remand, the ALJ should also consider whether Plaintiff's migraine headaches should be considered under Listing 11.03. Moreover, while the other issue from the first remand, the weight to be afforded to Dr. Rhody's opinion, has not been raised here, the ALJ should, of course, ensure that proper weight is given to his and all of the medical opinions on remand.

14